1  SHAWN AZIZZADEH (SBN 227558)
2     *Shawn@bedfordlg.com*
   **BEDFORD LAW GROUP, PLC**
3  1925 Century Park East, Suite 2120
   Los Angeles, CA 90067
4  Tel: (310) 507-7900
5  Fax: (310) 507-7910

6  OLIVIER A. TAILLIEU (SBN 206546)
      *otaillieu@ztllp.com*
7  **TAILLIEU LAW FIRM LLP**
8  450 N. Roxbury Dr., Suite 700
   Beverly Hills, California 90210
9  Tel: (310) 651-2440
10 Fax: (310) 651-2439

11 Attorneys for Plaintiffs
   MAHAD DAR and CREATIVE DREAM PRODUCTIONS LLC.
12
13          **UNITED STATES DISTRICT COURT**
14    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
15
16 MAHAD DAR, an individual and          CASE NO.
   CREATIVE DREAM
17 PRODUCTIONS, LLC a California         **COMPLAINT FOR:**
   Limited Liability Company;
18                                        **1. COPYRIGHT INFRINGEMENT;**
19          Plaintiff,                    **2. CONTRIBUTIRY COPYRIGHT**
                                          **INFRINGEMENT**
20      v.                                **3. VICARIOUS COPYRIGHT**
                                          **INFRINGEMENT**
21                                        **4. INDUCEMENT OF COPYRIGHT**
   JORDAN HOUSTON p/k/a "JUICY J";        **INFRINGEMENT**
22 COLUMBIA RECORDS a business            **5. BREACH OF CONTRACT**
   entity of form unknown; SONY MUSIC
23 ENTERTAINMENT a Delaware               **JURY TRIAL DEMAND**
   corporation; SONY CORPORATION
24 OF AMERICA, INC. a New York
   corporation;
25
26
27          Defendant.
28

                                          COMPLAINT

1       Mahad Dar and Creative Dream Production, for their Complaint against

2 COLUMBIA RECORDS; SONY MUSIC ENTERTAINMENT; and JUICY J

3 (collectively "Defendants"), allege as follows:

### NATURE OF THE ACTION

5     1.     This lawsuit concerns the unlawful misappropriation of the creative

6 work of Creative Dream Production and his Chief Executive and Chief Creative

7 Officer, Mahad Dar (collectively, "CDP" or "Plaintiffs").

8     2.     Following the old adage that "no good deed goes unpunished," CDP

9 performed above and beyond the call of duty to create, produce, edit, and deliver a

10 music video for Juicy J on a moment's notice.

11     3.     The video was an instant success and garnered millions of view on

12 various websites, generated significant revenue, and received critical acclaim. Yet,

13 neither Juicy J nor his representation ever negotiated, paid for, nor obtained, the

14 rights in the video.

15     4.     Adding insult to injury, Juicy J and his representation have engaged in

16 a campaign to strip CDP of its rightful ownership of the video by threatening legal

17 action for CDP's lawful use of its own work. This is irony at its best. Neither Juicy

18 J, Columbia, Sony Music, nor Sony Corporation own any rights in the music video

19 Bandz A Make Her Dance and their use and widespread dissemination of the Video

20 is a flagrant violation of Plaintiffs' rights.

### JURISDICTION AND VENUE

22     5.     This is a copyright case and thus this Court has subject matter

23 jurisdiction pursuant to 17 U.S.C. § 501, et seq. (copyright infringement) and 28

24 U.S.C. §§ 1331 (federal question jurisdiction), 1338(a) and 1338(b).

25     6.     The Defendants are subject to personal jurisdiction in this Court based

26 on continuous and systematic contacts within this judicial district. All the

27 defendants have significant contact with the state of California in general, and the

28 city of Los Angeles in particular.

COMPLAINT

1      7.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c)
2  because a substantial amount of the events and injury occurred in this judicial
3  district.

4  **PARTIES**

5      8.    Plaintiff Mahad Dar as an individual, and as the creative force behind
6  Creative Dream Production LLC ( collectively "CDP"), produces, shoots, and edits
7  music Videos (among other things) for recording artists and other celebrities.
8  CDP's Chief Executive Officer is Mr. Mahad Dar, who is responsible for all
9  creative and business decisions of the company.

10      9.    Defendant Jordan Houston is a recording artist professionally known as
11  "Juicy J" and will be referred herein as "Juicy J" or collectively with the other
12  defendants as "Defendants." Juicy J achieved commercial success as a performing
13  member of the Three 6 Mafia group and has since focused on his solo career.

14      10.    Defendant Columbia Records (Columbia) is a recording label, under
15  the ownership of Sony Music Entertainment. Columbia has signed Juicy J to a
16  recording contract on or about August 2012 and has represented Juicy J as a
17  recording artist since that time.

18      11.    Defendant Sony Music ("Sony Music") Entertainment is a music
19  corporation owned and operated by Sony Corporation of America.

20      12.    Sony Corporation of America ("Sony Corporation") is the United
21  States subsidiary of Japan's Sony Corporation, headquartered in Tokyo. It is the
22  umbrella company under which all Sony companies operate in the United States.

23  **GENERAL ALLEGATIONS**

24      13.    CDP is a world-wide cutting-edge production company that works
25  closely with the entertainment professionals to creatively produce some of the best
26  content for use with music videos, television shows, movies, commercials,
27  documentaries, interviews and event coverage.
28

COMPLAINT

1    14.    CDP prides itself on delivering to recording artists from all genres the
2  latest technology in Videos, working with a range of budgets and creating the hottest
3  concepts the seen to date. CDP has earned a solid reputation working with several
4  major label recording artists and celebrities, all of whom have become CDP's
5  satisfied clients over the years.

6    15.    CDP also works closely with clients in capturing raw and behind-the-
7  scenes footage for any event that capture the zeitgeist so desperately sought after by
8  all recording artists. CDP's work is all inclusive, providing all clients top to bottom
9  service for all projects, ensuring a complete product in the end with the highest
10  production quality possible. CDP also puts together creative treatments for all
11  projects to guarantee that they are tailored to suit each individual client. Finally,
12  CDP provides services in post-production work, making sure that the final product
13  is as near perfection as possible.

14                 **EVENTS LEADING UP TO THIS LAWSUIT**

15    16.    CDP's reputation and its ability to get the job done is the reason that,
16  on or about August 4, 2012, Juicy J called upon CDP to shoot his then new video for
17  the lead single title on his third solo album, "Bandz A Make Her Dance" ("the
18  Video").  Juicy J insisted that CDP produce the Video "within two days." The Video
19  was to feature Juicy J, Lil Wayne, and 2 Chainz—which added significantly to the
20  difficulties in logistics.

21    17.    The next day, on or about August 5, 2012, CDP created a full original
22  treatment for the Video and the entire production crew immediately flew from Los
23  Angeles to Miami for preparations.  Phase 1 would be shot there to capture the
24  footage of Lil' Wayne (who owns a residence in Miami) while phase 2 would be
25  shot in Atlanta to capture the footage of 2 Chainz (who owns a residence in the
26  Atlanta area).

27    18.    Once in Miami, on or about August 6, 2012, CDP undertook the entire
28  pre-production process, including location scouting, casting, hiring other off-camera

1  personnel, obtaining lighting for the shoot, secure the trailers for the shoot, obtain
2  props, recruit school band, organize food and craft services, obtain insurance and
3  provide all other needed functions to produce Phase 1 of the Video.

4       19.    On or about August 7, 2012, all aspects of the production had been
5  organized and ready to move forward.  Unfortunately, Lil Wayne informed CDP
6  that he would not appear for the shoot and thus everyone believed that the
7  production had been terminated indefinitely.

8       20.    However, about an hour later, Lil Wayne's representatives reached out
9  to CDP and informed them that Lil Wayne would participate in the Video and that
10  arrangements needed to be made immediately.

11       21.    As a result of the cancellation, CDP lost the venue that had been
12  secured and CDP had now less than an hour to find an alternate location.  CDP also
13  had to secure a trailer that could accommodate Lil Wayne's request that a television
14  set be on location so that he could watch the Olympics.

15       22.    Over the next fifteen hours, CDP produced and shot Phase 1 of the
16  Video that they had conceived.

17       23.    On or about August 9, 2012, Mr. Dar returned to Los Angeles and
18  began to organize Phase 2 of the Video, which was to take place in Atlanta and
19  feature 2 Chainz.

20       24.    On or about August 24, 2012, Mr. Dar and a crew from CDP flew to
21  Atlanta.

22       25.    On or about August 25, 2012, CDP undertook the entire pre-production
23  process, including location scouting; casting; hiring other off-camera personnel;
24  obtaining lighting for the shoot; secure trailers for the shoot; obtain props; recruit
25  school band; organize food and craft services; obtain insurance and provide all other
26  needed functions to produce Phase 2 of the Video.

27       26.    On or about August 26, 2012, CDP began principal photography,
28  which lasted through August 27.

COMPLAINT

27.    All creative aspects of the Video were conceived and executed by Dar. All funds used to produce the Video originated with Dar. Dar hired all of the crew and received assignments and/or work for hire agreements from all of the creative personnel. As such, Dar was and remains today the sole copyright owner of the Video. Dar never signed a "work for hire" agreement, nor was it the intention of the parties that Dar or CDP would work under a "work for hire" agreement. CDP was to own all content created under its direction until an agreement could be reached to transfer or assign all rights to the Video for a negotiated amount.

28.    All discussions about the Video, through the end of principal photography, were with Juicy J's manager. Upon conclusion of principal photography in Atlanta, however, Juicy J became represented by Columbia, a recording label under the Sony Music umbrella. As such, CDP began discussions with Sony to sell and transfer all of its rights in the Video.

29.    After several discussions, CDP finalized the Video and forwarded a final copy to Sony. No deal was ever reached with Columbia and CDP maintained all rights to the Video. To be clear, Columbia never reimbursed or contributed a single dollar to the production of the Video by CDP nor did Columbia ever receive an assignment, transfer, or license of rights. Instead, Columbia released the Video without any agreement from CDP in direct violation of CDP's copyrights in the Video.

## FIRST CLAIM FOR RELIEF

### (For Copyright Infringement Under 17 U.S.C. § 101, *Et Seq.*)

### (Against Juicy J and Columbia)

30.    CDP realleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 herein as if fully set forth.

31.    CDP, through Dar, owns all right, title and interest in the music Video "Bandz A Make Her Dance."

1    32.    The Video is an original works of authorship and constitute
2 copyrightable subject matter under the Copyright Act, 17 U.S.C. §§ 101 et seq.

3    33.    Dar has filed an application to register the Video with the United State
4 Copyright Office on October 3, 2014 under Application No. 1-1796133801, but has
5 been the owner of said copyright as a matter of law since its creation on or about
6 August 29, 2012.

7    34.    CDP and Dar own the exclusive right to (1) to reproduce the
8 copyrighted work in copies (2) to prepare derivative works based upon the
9 copyrighted work; (3) to distribute copies of the copyrighted work to the public by
10 sale or other transfer of ownership, or by rental, lease, or lending; (4) to perform the
11 copyrighted work publicly; (5) to display the copyrighted work publicly; and (6) to
12 perform the copyrighted work publicly by means of a digital audio transmission.

13    35.    On information and belief, in direct violation of plaintiffs' exclusive
14 rights, defendants have infringed and, unless enjoined by this Court, will continue to
15 infringe the copyrights in the Video by, among other things:

16    Making unauthorized copies of the Video;

17    Making unauthorized derivative work of the Video;

18    Distributing copies of the Video to various media outlets;

19    Authorizing others to use, display or perform the Video publicly; and

20    Otherwise making the Video available to third parties without the
21 authorization of consent of CDP.

22    36.    As a direct and proximate result of defendants' foregoing acts, plaintiffs
23 are entitled to the following damages:

24    a.    Plaintiffs' actual damages sustained as a result of defendants' acts of
25 copyright infringement according to proof;

26    b.    Defendants' gains, profits, and advantages they have obtained as a
27 result of their acts of copyright infringement according to proof; and

28

7

COMPLAINT

1     c.    Plaintiffs' reasonable attorneys' fees and costs pursuant to the Copyright

2  Act of 1976, 17 U.S.C. § § 101, et seq. and 17 U.S.C. § 505.

3     37.    Further, the threat of irreparable harm to plaintiffs as a result of

4  defendants' conduct leaves plaintiffs without adequate remedy at law. Plaintiffs are

5  entitled to an injunction restraining defendants, their agents, servants, employees,

6  attorneys, successors, assigns, subsidiaries, and all persons, firms, and corporations

7  acting in concert with them, from directly or indirectly infringing the copyrights in

8  the Video, including but not limited to continuing to distribute, market, advertise,

9  promote, produce, sell, or offer for sale the Video or any works derived or copied

10  from the Video, and from participating or assisting in any such activity whether or

11  not it occurs within the United States..

12     38.    The Video was a major hit and received over 34,000,000 views on

13  YouTube.  This was a particularly important Video, as the single "Bandz a Make

14  Her Dance" was the lead single from Juicy J's third studio album Stay Trippy. The

15  song, features guest appearances from fellow rappers Lil Wayne and 2 Chainz.

16     39.    The single has sold over 1,000,000 copies and is certified Platinum by

17  the RIAA.

18                     **SECOND CLAIM FOR RELIEF**

19              (Contributory Copyright Infringement)

20        (Against Juicy J, Columbia, Sony Music and Sony Corporation)

21     40.    Plaintiffs incorporate by reference the allegations contained in

22  paragraphs 1 through 39 as though fully set forth herein.

23     41.    The Video constitute copyrightable subject matter under the Copyright

24  Act, 17 U.S.C. § § 101 et seq. Plaintiffs has duly applied for the copyrights in and to

25  the Video with the United States Copyright Office.

26     42.    CDP, through DAR, owns the exclusive right to (1) to reproduce the

27  copyrighted work in copies (2) to prepare derivative works based upon the

28  copyrighted work; (3) to distribute copies of the copyrighted work to the public by

1  sale or other transfer of ownership, or by rental, lease, or lending; (4) to perform the
2  copyrighted work publicly; (5) to display the copyrighted work publicly; and (6) to
3  perform the copyrighted work publicly by means of a digital audio transmission.

4       43.    On information and belief, Columbia and Sony knew or had reason to
5  know that defendants have infringed and, unless enjoined by this Court, will
6  continue to infringe the copyrights in the Video by, among other things:

7       a.    Making unauthorized copies of the Video;

8       b.    Making unauthorized derivative work of the Video;

9       c.    Distributing copies of the Video to various media outlets;

10       d.    Authorizing others to use, display or perform the Video publicly; and

11       e.    Otherwise making the Video available to third parties without the
12  authorization of consent of CDP.

13       44.    On information and belief, Juicy J, Columbia, Sony Music, and Sony
14  Corporation induced, caused, and materially contributed to the unauthorized
15  preparation, duplication, and distribution of the Video, and are continuing to do so.

16       45.    In violation of plaintiffs' exclusive rights, defendants have contributed
17  to the infringement and, unless enjoined by this Court, will continue to contribute to
18  the infringement of the copyrights in the Video.

19       46.    As a direct and proximate result of defendants' foregoing acts, plaintiffs
20  are entitled to the following damages:

21       a.    Plaintiffs' actual damages sustained as a result of defendants' acts of
22  contributory copyright infringement according to proof;

23       b.    Defendants' gains, profits, and advantages they have obtained as a
24  result of their acts of contributory copyright infringement according to proof; and

25       c.    Plaintiffs' reasonable attorneys' fees and costs pursuant to the Copyright
26  Act of 1976, 17 U.S.C. § § 101, et seq. and 17 U.S.C. § 505.

27       47.    Further, the threat of irreparable harm to plaintiffs as a result of
28  defendants' conduct leaves plaintiffs without adequate remedy at law. Plaintiffs are

COMPLAINT

1 | entitled to an injunction restraining defendants, their agents, servants, employees,
2 | attorneys, successors, assigns, subsidiaries, and all persons, firms, and corporations
3 | acting in concert with them, from directly or indirectly infringing the copyrights in
4 | the Video, including but not limited to continuing to distribute, market, advertise,
5 | promote, produce, sell, or offer for sale the Video or any works derived or copied
6 | from the Video, and from participating or assisting in any such activity whether or
7 | not it occurs within the United States.

### THIRD CLAIM FOR RELIEF

Vicarious Copyright Infringement

(Against Sony Corporation)

48.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 47 as though fully set forth herein.

49.    The Video constitute copyrightable subject matter under the Copyright Act, 17 U.S.C. § § 101 et seq. Plaintiffs has duly applied for the copyrights in and to the Video with the United States Copyright Office.

50.    CDP owns the exclusive right to (1) to reproduce the copyrighted work in copies (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) to perform the copyrighted work publicly; (5) to display the copyrighted work publicly; and (6) to perform the copyrighted work publicly by means of a digital audio transmission.

51.    On information and belief, Sony Corporation enjoys a direct financial benefit from the preparation, duplication, and distribution of the Video.

52.    On information and belief, by way of its ownership of the copyright in the Video, CDP has had the legal right and ability to authorize and direct the duplication, and distribution of the Video.

1      53.   In direct violation of plaintiffs' exclusive rights, defendants have

2 vicariously infringed and, unless enjoined by this Court, will continue to vicariously

3 infringe the copyrights in the Video.

4      54.   As a direct and proximate result of defendants' foregoing acts, plaintiffs

5 are entitled to the following damages:

6      a.   Plaintiffs' actual damages sustained as a result of defendants' acts of

7 contributory copyright infringement according to proof;

8      b.   Defendants' gains, profits, and advantages they have obtained as a

9 result of their acts of contributory copyright infringement according to proof; and

10     c.   Plaintiffs' reasonable attorneys' fees and costs pursuant to the Copyright

11 Act of 1976, 17 U.S.C. § § 101, et seq. and 17 U.S.C. § 505.

12     55.   Further, the threat of irreparable harm to plaintiffs as a result of

13 defendants' conduct leaves plaintiffs without adequate remedy at law. Plaintiffs are

14 entitled to an injunction restraining defendants, their agents, servants, employees,

15 attorneys, successors, assigns, subsidiaries, and all persons, firms, and corporations

16 acting in concert with them, from directly or indirectly infringing the copyrights in

17 the Video, including but not limited to continuing to distribute, market, advertise,

18 promote, produce, sell, or offer for sale the Video or any works derived or copied

19 from the Video, and from participating or assisting in any such activity whether or

20 not it occurs within the United States.

### FOURTH CLAIM FOR RELIEF

Inducement Of Copyright Infringement

(Against Juicy J, Columbia, and Sony Music)

24     56.   Plaintiff incorporates by reference the allegations contained in

25 paragraphs 1 through 58 as though fully set forth herein.

26     57.   The Video constitute copyrightable subject matter under the Copyright

27 Act, 17 U.S.C. § § 101 et seq. Plaintiffs has duly applied for the copyrights in and to

28 the Video with the United States Copyright Office.

11

COMPLAINT

58.   CDP owns the exclusive right to (1) to reproduce the copyrighted work in copies (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) to perform the copyrighted work publicly; (5) to display the copyrighted work publicly; and (6) to perform the copyrighted work publicly by means of a digital audio transmission.

59.   On information and belief, Juicy J, Columbia, and Sony Music have taken active steps to encourage infringement of the Video.

60.   On information and belief, Juicy J, Columbia, and Sony Music encouragement has caused third parties to infringe the Video.

61.   As a direct and proximate result of the foregoing acts of defendants, plaintiffs are entitled to the following damages:

a.   Plaintiffs' actual damages sustained as a result of defendants' acts of contributory copyright infringement according to proof;

b.   Defendants' gains, profits, and advantages they have obtained as a result of their acts of contributory copyright infringement according to proof; and

c.   Plaintiffs' reasonable attorneys' fees and costs pursuant to the Copyright Act of 1976, 17 U.S.C. § § 101, et seq. and 17 U.S.C. § 505.

62.   Further, the threat of irreparable harm to plaintiffs as a result of defendants' conduct leaves plaintiffs without adequate remedy at law. Plaintiffs are entitled to an injunction restraining defendants, their agents, servants, employees, attorneys, successors, assigns, subsidiaries, and all persons, firms, and corporations acting in concert with them, from directly or indirectly infringing the copyrights in the Video, including but not limited to continuing to distribute, market, advertise, promote, produce, sell, or offer for sale the Video or any works derived or copied from the Video, and from participating or assisting in any such activity whether or not it occurs within the United States.

# **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for the Court to enter a judgment against defendants as follows:

1.      That the Court find that defendants have infringed the copyrights in the Video;

2.      That the Court find that Juicy J, Columbia, Sony Music and Sony Corporation have contributed to the infringement of the copyrights in the Video, vicariously infringed the copyrights in the Video, and induced infringement of the copyrights in the Video;

3.      That the Court enjoin defendants, their agents, servants, employees, attorneys, successors, assigns, subsidiaries, and all persons, firms, and corporations acting in concert with them, from directly or indirectly infringing the copyrights in the Video, including but not limited to continuing to distribute, market, advertise, promote, produce, sell, or offer for sale the Video or any works derived or copied from the Video, and from participating or assisting in any such activity whether or not it occurs within the United States.

4.      That the Court enter judgment for plaintiffs and against defendants and award plaintiffs damages for:

a.      Plaintiffs' actual damages sustained as a result of defendants' acts of direct and secondary copyright infringement according to proof;

b.      Defendants' gains, profits, and advantages they have obtained as a result of their acts of direct and secondary copyright infringement according to proof; and

c.      Plaintiffs' reasonable attorneys' fees and costs pursuant to the Copyright Act of 1976, 17 U.S.C. § § 101, et seq. and 17 U.S.C. § 505.

///

///

///

13

1       5.    That the Court grant such other, further, and different relief as the

2  Court deems just and proper.

3

4  Dated: October 3, 2014                    Respectfully submitted:

5

6                                         **BEDFORD LAW GROUP, PLC**
                                        **TAILLIEU LAW FIRM LLP**

7                                       SHAWN AZIZZADEH

8                                       OLIVIER A. TAILLIEU

9

10

11                      By: _____
                          Attorneys for CREATIVE DREAM

12                      PRODUCTIONS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1

## DEMAND FOR JURY TRIAL

2      DAR and CDP hereby requests a trial by jury.

3

4  Dated: October 3, 2014                    Respectfully submitted:

5
                                            **BEDFORD LAW GROUP, PLC**
6                                            **TAILLIEU LAW FIRM LLP**

7                                            SHAWN AZIZZADEH
8                                            OLIVIER A. TAILLIEU

9

10                              By: _____
11                                            Attorneys for CREATIVE DREAM
12                                            PRODUCTIONS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT